UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TITUS CURTIS WILLIS,

          Petitioner,           Case Number 09-11945
                                          Honorable David M. Lawson

v.

SHIRLEE HARRY,

          Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Titus Curtis Willis, a prisoner in the custody of the Michigan Department of Corrections, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions of armed robbery and concurrent sentences of thirty-seven and one-half to sixty years. Willis alleges that he was deprived of his constitutional rights to a speedy trial and the effective assistance of trial counsel. The Court finds that Willis's claims lack merit and do not warrant habeas relief. The Court therefore will deny the petition.

I.

Willis's conviction stems from the robbery of a CVS store in Oak Park, Michigan on May 31, 2001 at approximately 9:00 p.m. The prosecutor's case hinged on two eyewitnesses, both cashiers at the store when the robbery occurred. At trial, Donna Montgomery testified that she was employed as a cashier at the CVS store on May 31, 2001. She stated that Willis stood at the end of her check-out line and told several people to go ahead of him. When he eventually got to the register, he had a bottle of beer and some deodorant, which he presented to her as if he were going to pay for them. Instead of paying for the merchandise, he produced a gun covered with a plastic bag. Montgomery said Willis pointed the gun at her and told her not to move or say anything. He

ordered her to give him the money in the register, which she did. Montgomery said Willis then went to the other check-out line and took the money from her co-worker's register. After Willis left, Montgomery alerted the store manager that she had been robbed. The manager called the police, and an officer came to the store and took Montgomery's statement. Montgomery told police at the scene that the robber was bald. On June 9, 2001 Sergeant Marlon Benson went to the CVS store and showed Montgomery photographs of potential suspects. Montgomery saw Willis's photograph in the array and circled it. At trial, Montgomery identified Willis in the courtroom and in a videotape of the robbery.

On cross-examination, Montgomery admitted that the photograph she picked out of the photo array was the same one that she had seen on a televised news report before viewing the photo array. Willis was shown with hair in the photo array. Montgomery testified that she recognized Willis as the robber even though he had hair in the photograph. Montgomery also testified that she had no doubt that Willis was the man who had robbed her.

Devon Latrice Hall, the other cashier, testified that shortly after 9:00 p.m. that day, Willis came to her cash register and asked her for a carton of cigarettes. She could see that Willis was holding a gun under a plastic bag, but he said that he would not hurt her. Montgomery, who had already been robbed by Willis, yelled at Hall to give him the cigarettes. Hall put together various packs of cigarettes to make up a full carton. Willis ordered Hall to take all the money from the register and put it in the bag he was holding. Hall gave Willis the cigarettes and put the money from the register into the bag. Willis then left the store. Hall testified that the following week a police detective came to her apartment, showed her two photo arrays that each contained six photographs, and asked her if the person that robbed the CVS was in any of the photographs. Hall identified

Willis's picture and drew a circle around it. Hall identified Willis at trial as well. Hall said that Willis had been directly in front of her during the robbery and she had no doubt he was the man who robbed her.

Sergeant Marlon Benson, the Oak Park detective on the case, testified that when he was assigned to investigate the robbery at the CVS, he prepared the photo array, which included Willis's photograph. The photograph predated the date of the robbery. Benson testified that he showed the photo array to Montgomery at the CVS store on June 9, 2001, and Montgomery pointed out Willis's photograph. Benson stated that Montgomery was positive about her choice, but she said Willis's hair was shorter at the time of the robbery. Benson also testified that he showed the same photo array to Hall. Benson said Hall also picked out Willis and stated that she was sure of her choice even though Willis's hair was shorter at the time of the robbery.

Benson explained to the jury that Montgomery and Hall had described the robber to the police as clean-shaven, wearing a baseball cap, and having a bald head or short hair on the sides. Benson admitted that other than the videotape, Hall and Montgomery's identifications were the only evidence linking Willis to the crime, and the police had not recovered the gun used in the robbery.

The Oakland County, Michigan prosecutor's office issued a complaint naming Willis in June 2001, but he was not arraigned until August 2005. His trial began on November 21, 2005. During most of that four-year hiatus, Willis was serving a sentence for an unrelated armed robbery conviction. That conviction occurred in July 2001 in neighboring Wayne County. Willis contends that the Oakland County court should have dismissed the charges against him based on a violation of Michigan's 180-day statute, Mich. Comp. Laws § 780.131(1); which requires that charges outstanding against a prison inmate be resolved within 180 days of certain triggering events. The

State maintained that the delay between June 2001 and August 2005 resulted from the prosecutor's ignorance of Willis's location. The trial court rejected Willis's argument.

Willis did not testify or present any witnesses at trial, and both attorneys stated during closing argument that the main issue in the case was the credibility of the eyewitnesses. On November 22, 2005 the jury found Willis guilty of two counts of armed robbery. The trial court sentenced Willis as a fourth habitual offender to two concurrent terms of thirty-seven and one-half to sixty years. However, Willis received sentencing credit for 1,325 days he had been in custody on the unrelated robbery sentence, that is, from July 2001.

On appeal, Willis's attorney filed a brief arguing error based on the trial court's refusal to dismiss the charges based on a violation of Michigan's 180-day statute and the denial of Willis's right to a speedy trial. In a *pro se* supplemental brief, Willis argued that he was deprived of his constitutional right to the effective assistance of trial counsel. On July 24, 2007 the Michigan Court of Appeals affirmed Willis's conviction in an unpublished, *per curiam* opinion. *People v. Willis*, No. 267896, 2007 WL 2118991 (Mich. Ct. App. July 24, 2007). The Michigan Supreme Court denied leave to appeal. *People v. Willis*, 480 Mich. 1077; 744 N.W.2d 163 (2008).

Willis filed a habeas corpus petition in this Court that incorporates by reference the following claims from his state appellate briefs:

I. The trial court's refusal to dismiss the charges with prejudice based upon a violation of the 180-day rule, and/or Mr. Willis' rights to a speedy trial, where the warrant issued in June 2001, and Mr. Willis had been in the Department of Corrections and available for prosecution at least since August 2001, was error necessitating reversal.

II. Petitioner was deprived of his state and federal constitutional right to the effective assistance of counsel where counsel failed to object to the trial court's failure to properly address petitioner's Sixth Amendment speedy trial claim, and where counsel failed to establish a record in connection with

> petitioner's inability to present a complete defense, as well as the prejudice suffered by petitioner due to the denial of a speedy trial. Counsel was equally ineffective for failure to investigate, interview, [and] call witnesses favorable to the defense, present a defense theory, and for failing to subject the prosecutor's case to a meaningful adverse testing under *Cronic*.

Pet. at 3-4.

In her answer, the respondent argues that because Willis is serving a concurrent sentence of forty to sixty years for the armed robbery in Wayne County, the concurrent-sentence doctrine precludes the Court from granting relief because Willis will remain in state custody even if the Court orders his release. The respondent also argues that Willis's speedy-trial claim lacks merit, the alleged violation of Michigan's 180-day rule is not a cognizable claim on habeas corpus review, and that the state court's decision that Willis was not denied effective assistance of counsel was objectively reasonable.

II.

A writ of habeas corpus may only be granted to a person who is "in custody." 28 U.S.C. §§ 2241(c)(3), 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (explaining that under sections "2241(c)(3) and 2254(a) [and] . . . the common-law history of the writ . . . the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody"). Willis certainly is "in custody" as a result of his substantial sentence imposed by the Oakland County court. But Willis is serving a concurrent sentence of approximately the same length on his Wayne County conviction. Under the "concurrent sentencing doctrine," a "court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction."

*Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989) (citations omitted); *see also United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992) (same). The Court does not believe the doctrine should be invoked here.

The doctrine is a discretionary one, *see Hughes*, 964 F.2d at 541, and courts "are admittedly hesitant to apply [it]," *Dale*, 878 F.2d at 935 n.3; *see also Winn v. Renico*, 175 F. App'x 728, 732 (6th Cir. 2006) (same). It is applicable only "when there is no possibility of adverse 'collateral consequences' if the convictions stand." *Winn*, 175 F. App'x at 732 (citations omitted); *Dale*, 878 F.2d at 935 n.3. "[T]here is no jurisdictional bar to consideration of challenges to multiple convictions, even though concurrent sentences were imposed." *Benton v. Maryland*, 395 U.S. 784, 791 (1969). The Court believes that "no considerations of judicial economy or efficiency . . . would outweigh the interest of [Willis] in the opportunity to clear his record of a conviction . . . ." *United States v. Maze*, 468 F.2d 529, 536 n.6 (6th Cir. 1972). Moreover, multiple convictions could affect Willis's suitability for parole. Parole itself could trigger the eligibility for habeas relief, since a person is considered to be "in custody" when his liberty is directly circumscribed by government oversight, such as parole. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).

But habeas relief cannot be granted unless a prisoner satisfies the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case. AEDPA "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court

has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its unanimous decision two terms ago in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state court rulings, and demands that state court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures

to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 673 F.3d at 473-74; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

Willis alleges that the charges against him should have been dismissed because of violations of Michigan's 180-day statute and his constitutional right to a speedy trial. According to Willis, the delay in bringing him to trial hampered his ability to gather witnesses who could establish an alibi defense and who could describe his physical appearance on May 31, 2001.

The "180-day Speedy Trial Act" is a unique feature of Michigan law that requires a prison inmate who is the subject of a pending criminal charge to "be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information[] or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, . . . information[] or complaint." Mich. Comp. Laws § 780.131(1); *see also* Mich. Ct. Rule 6.004(D)(1). The remedy for violation is dismissal of the charges with prejudice. Mich. Ct. Rule 6.004(D)(2). Those provisions are matters of state law. There is no suggestion that they create federal constitutional

rights by themselves. And "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

However, Willis does have a federal constitutional right to a speedy trial grounded in the Sixth Amendment. U.S. Const. amend. VI; *see also Klopfer v. North Carolina*, 386 U.S. 213, 222 (1967) (holding that the right to a speedy trial is incorporated through the Fourteenth Amendment and thus applies to the states). In this case that right was not abridged. According to the court docket sheet, Willis was arraigned on the arrest warrant on August 25, 2005. A pretrial hearing was held on October 25, 2005 at which time a trial date was set for November 21, 2005. Defense counsel filed a motion to dismiss, which was denied on November 21, 2005. Trial began on that date. The jury reached a guilty verdict the following day. Under the Sixth Amendment, the length of the delay is measured from the earlier of the date of the indictment or the date of the arrest, and the date trial begins. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). That delay — less than three months — did not frustrate Willis's speedy trial right.

The Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), announced a four-factor test for evaluating a Sixth Amendment speedy-trial claim, that calls for assessing: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* at 530. None of those four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. The length of the delay is a threshold factor for any Sixth Amendment speedy-trial claim. *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007). "That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *United States v. Gardner,* 488 F.3d 700, 719

(6th Cir. 2007); *see also Doggett v. United States*, 505 U.S. 647, 651-52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."). The Court must determine first whether the delay here was "uncommonly long" or "extraordinary." *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006) (citations omitted). A delay approaching one year is presumptively prejudicial. *Doggett*, 505 U.S. at 652 n.1.

As the Michigan Court of Appeals noted, the record establishes that the initial warrant was issued on June 12, 2001. The court also stated that "the record fails to indicate when [Willis] was formally arrested on this warrant," *People v. Willis*, 2007 WL 2118991, at *2, but the court found that Willis, in all likelihood, was arrested on the charges one or two days before his arraignment, which was approximately three months before his trial. Here, the time from the arraignment to conviction was less than three months, which is not uncommonly long.

The time lapse between the initial arrest warrant and Willis's arraignment — over four years — did not implicate Willis's Sixth Amendment rights. A criminal defendant's right to a speedy trial attaches only when a criminal proceeding has been initiated and the defendant "faces a real and immediate threat of conviction." *Watford*, 468 F.3d at 901 (quoting *United States v. Sanders*, 452 F.3d 572, 579 (6th Cir. 2006)). Although an arrest warrant was issued for the petitioner in 2001, no arrest was made until 2005, and no indictment or information was filed until August 2005, which was the triggering event for measuring delay under the Sixth Amendment. *Id.* at 901 & n.4 (stating that "in most cases, the triggering event [under the Sixth Amendment] will be the filing of an indictment"; although acknowledging that "arrest may also trigger an accused's Sixth Amendment speedy trial rights" (citing *United States v. MacDonald*, 456 U.S. 1, 7 (1982))).

-11-

The state courts' decisions rejecting the petitioner's speedy trial claims did not unreasonably apply federal constitutional law.

The delay between the arrest warrant and filing the charging documents — known as "preindictment delay" — however, may implicate the Due Process Clause. *Marion*, 404 U.S. at 324. But the Supreme Court has observed that "no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." *United States v. Lovasco*, 431 U.S. 783, 792 (1977). Proof of prejudice is a necessary element of a due process claim for preindictment delay. *Lovasco*, 431 U.S. at 790. The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for preindictment delay is warranted only when the defendant shows both substantial prejudice to his right to a fair trial and that the delay was intentionally imposed by the government to gain a tactical advantage. *See United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992).

The respondent maintains that once the State received notice of Willis's location, it immediately moved forward with the prosecution. Willis's counter argument is that the respondent had notice of his location long before he was arrested or arraigned on the charges. But Willis does not allege that the prosecutor's delay was in bad faith. And a careful reading of the record suggests that the delay was plausibly due to the respondent's lack of knowledge of Willis's whereabouts.

Moreover, Willis has not shown that he was prejudiced by the delay. He was incarcerated on a different armed robbery charge. Any anxiety and concern that he experienced during his pretrial delay can be attributed to his other trial and conviction for the unrelated armed robbery in Wayne County. Willis has offered no evidence to support his argument that his defense was impaired by the State's delay. When the government "prosecutes a case with reasonable diligence,

a defendant who can not demonstrate how his defense was prejudiced with specificity will not make out a [delay] claim no matter how great the ensuing delay." *United States v. Howard*, 218 F.3d 356, 564 (6th Cir. 2000).

No due process violation occurred here.

### B.

Next, Willis alleges he was deprived of his constitutional right to effective assistance of counsel because his trial attorney did not (1) object to the trial court's failure to address his speedy-trial claim properly; (2) investigate, interview, or call witnesses; or (3) subject the prosecution's case to meaningful adversarial testing. The Michigan Court of Appeals determined that (1) Willis's speedy trial claim was futile, and his counsel's failure to present a motion based on a speedy trial violation did not fall below an objectively reasonable standard; (2) the record does not contain evidence that Willis's counsel failed to investigate witnesses or evidence; and (3) it is not apparent from the record that counsel's decision not to call certain witnesses deprived Willis of a substantial defense. *People v. Willis*, 2007 WL 2118991, at *2-3.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To establish ineffective assistance of counsel "a defendant must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Premo v. Moore*, --- U.S. ---, ---, 131 S.Ct. 733, 739 (2011) (same).

Because of the high deference accorded state court determinations by the AEDPA, establishing that counsel was ineffective, and therefore the petitioner was denied his right to counsel under the Sixth Amendment, is difficult. "Surmounting *Strickland*'s high bar is never an easy task."

-13-

*Padilla v. Kentucky*, 559 U.S. 356, ---, 130 S.Ct. 1473, 1485 (2010). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under [section] 2254(d) is all the more difficult. The standards created by *Strickland* and [section] 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under [section] 2254(d). When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S.Ct. at 788 (internal citations omitted).

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Willis alleges that his trial attorney was ineffective because he based his speedy trial motion only on the 180-day rule under state law and not on the Sixth Amendment. Willis also claims that defense counsel should have established a record regarding Willis's inability to present a complete defense due to being denied a speedy trial.

The Court agrees with the Michigan Court of Appeals's conclusion that because Willis's speedy trial claim was meritless, failure to present the claim to the trial court did not fall below an objective standard of reasonableness. Counsel was not required to raise meritless arguments.

-14-

*Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990) (concluding that because the petitioner did not have a meritorious speedy trial claim, trial counsel was under no obligation to raise the claim and his failure to do so did not constitute ineffective assistance of counsel).

Willis also argued that his trial attorney did nothing to challenge the validity of the eyewitness identification, and he failed to investigate, interview, or call witnesses favorable to the defense. Willis argues that his aunt and cousin could have testified at trial that the man seen on the surveillance video was not him, allowing him plausibly to raise a misidentification defense. Both eyewitnesses described the robber to the police as clean-shaven and bald or having short hair, but Willis says that his appearance on the day of the robbery did not match that description, a claim that would have been supported by his aunt, his cousin, and his parole officer. Willis also argues that defense counsel should have interviewed the investigating police officer and asked the officer about Barbara Criqui and Jessica West, who were witnesses. Willis states that Criqui and West could have been used at trial to show that they also described the suspect to the police as being bald and without facial hair. Willis further argues that if defense counsel had interviewed Montgomery prior to trial, counsel would have discovered that Montgomery's identification of Willis as the suspect was based on her viewing of a televised news story, during which his photo was aired.

Although defense counsel certainly could have performed better, and perhaps more effectively, the Court believes that the petitioner has not met the high bar set by the Supreme Court for establishing prejudice. The jury was made aware that Montgomery and Hall had described the suspect to the police as being clean-shaven and bald. Although defense counsel may not have interviewed Montgomery before trial (as he should have), he elicited testimony from her at trial that

-15-

she saw Willis's picture on a newscast about the robbery before she viewed the photo array. The jury was fully aware of any discrepancy regarding Willis's appearance, and the jury was given the opportunity to determine Montgomery's credibility. Consequently, Willis was not prejudiced by his attorney's alleged failure to interview Montgomery before trial. In addition, at trial, the prosecutor admitted the surveillance video into evidence and it was seen by the jury. The appellate court did not review the video. However, because the jury saw the same video the prospective witnesses would have seen, it is unlikely that their commentary on who was depicted in the pictures would have had an effect on the outcome of the trial that could undermine confidence in the result. *Strickland*, 466 U.S. at 694 (defining "prejudice" as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," which requires showing "a probability sufficient to undermine confidence in the outcome"). Demonstrating prejudice is not an easy task. The Supreme Court has emphasized the point that satisfying *Strickland*'s prejudice prong "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen*, 131 S. Ct. at 1403 (citing *Richter*, 131 S.Ct. at 791).

Willis counters that he is not required to show prejudice because his trial attorney failed to subject the prosecutor's case to meaningful adversarial testing. The state court rejected that claim out of hand because the record did not support it. The Court agrees. Before prejudice can be presumed under *United States v. Cronic*, 466 U.S. 648 (1984), the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone*, 535 U.S. 685, 696-97 (2002). Here, the record shows that defense counsel moved to dismiss the charges, made an opening statement and closing argument, cross-examined the State's witnesses, and advocated for his client's acquittal. The record

does not show a "complete" failure of representation, and the state court's decision on that score did not unreasonably apply federal law.

Willis faults his trial attorney for making an opening statement that gave no hint as to what the defense would be. The purpose of an opening statement "is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole . . . ." *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). In some cases, it may even be appropriate to forego an opening statement. *See Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) (explaining that "[a]n attorney's decision not to make an opening statement 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel'") (quoting *Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E. D. Mich. 2002).

Willis did not testify or present any witnesses. It was therefore not necessary to make a lengthy opening statement. Defense counsel explained to the jurors that they could consider only the testimony and exhibits in the case and that they were the sole judges of the witness' credibility. Defense counsel urged the jurors to use their everyday logic and common sense. He argued that the jurors could come to only one conclusion: that Willis was not guilty of armed robbery. The opening statement was adequate and did not resemble a deficient performance.

Willis alleges next that trial counsel's cross-examination of prosecution witnesses failed to elicit any information helpful to the defense. Not so. On cross-examination of Hall, defense counsel asked how long the robbery took and whether Hall had noticed Willis before he stood in her line. Hall responded by stating that the incident could have lasted only a couple of minutes and that she had not noticed Willis when he stood in Montgomery's line. Defense counsel also elicited testimony

from Hall that she did not stare at Willis during the robbery. Hall stated that she looked at him and then quickly put her head down. Hall also said that she had not described Willis's facial features to the police.

On cross-examination of Montgomery, defense counsel noted the fact that the robbery occurred four years earlier and that Montgomery could not recall telling the police that Willis actually attempted to pay for the items, but did not give her enough money. Defense counsel also mentioned the fact that Montgomery could not recall telling Hall to prepare a carton of cigarettes for Willis. Defense counsel elicited testimony from Montgomery that she had seen Willis's photograph on a television newscast before the police showed her the same photo in a photo array. On re-cross-examination, defense counsel pointed out to Montgomery that she had described Willis's jacket to the police as silver in color, but she had testified at trial that the jacket was blue.

On cross-examination of Sergeant Benson, defense counsel asked Benson about physical evidence. Benson stated that he did not send any items to the lab to be analyzed for fingerprints. Benson also said that the videotape and still photographs from the incident were focused on the store's front door, not the cash registers. Defense counsel also elicited testimony that no weapon was recovered, and that the only evidence linking Willis to the crime was the identification provided by Hall and Montgomery.

Defense counsel's cross-examination of witnesses was geared to discrediting the eyewitnesses' identification of Willis as the robber. The cross-examinations were adequate. In fact, counsel evoked some important testimony. The Court therefore finds no merit in Willis's claim that defense counsel was ineffective due to his cross-examination of prosecution witnesses.

Willis alleges that defense counsel's closing argument was a rambling rendition of what the prosecution had already established. As the Supreme Court explained in *Yarborough v. Gentry*, 540 U.S. 1 (2003):

> [t]he right to effective assistance extends to closing arguments. *See Bell c. Cone*, 535 U.S. 625, 701-702 (2002); *Herring v. New York*, 422 U.S. 853, 865 (1975). Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact," *id.* at 862, but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. *See Bell*, 535 U.S. at 701-02. Judicial review of a defense attorney's summation is therefore highly deferential — and doubly deferential when it is conducted through the lens of federal habeas.

*Id*. at 5-6.

Defense counsel attempted to point out in his closing argument that the eyewitnesses' testimony was flawed. He argued that it was incredible to think the robbery occurred as described by the eyewitnesses, that their reactions to the incident were questionable, and that Montgomery's identification of Willis likely was the result of seeing his photograph on the news before viewing the photo array. Defense counsel also pointed out that no fingerprints linked Willis to the crime, and that the photograph, which the eyewitnesses picked out of the array, did not match the description given of the suspect after the crime. Counsel maintained that the only common-sense verdict was a not-guilty verdict. He apparently created doubt in some of the jurors' minds because the jury initially could not reach a verdict.

The Court finds that the closing argument was adequate, and Willis cannot establish that he was prejudiced by the argument, "even if the closing was not as stirring or as eloquent as it could have been." *Johnson v. Mitchell*, 585 F.3d 923, 945 (6th Cir. 2009). Given the lack of evidence in

Willis's favor, "there is little more that counsel could have done in terms of arguing [Willis]'s case to the jury." *Ibid*.

III.

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States. The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

        s/David M. Lawson
        DAVID M. LAWSON
        United States District Judge

Dated:   March 4, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 4, 2013.

        s/Deborah R. Tofil
        DEBORAH R. TOFIL